Santos De Jesús Díaz y la Sociedad de Gananciales compuesta por él y su esposa Diómedes Ortiz Pérez y Edgardo De Jesús Ortiz, demandantes y recurrentes, *v.* Carlos M. Carrero, Sucn. Epifanio Ocasio et al., demandados y recurridos.

*Número:* R-82-76      *Resuelto:* 21 de abril de 1982

___

*Rubén Rivera Ramos*, abogado de los recurrentes; *Félix M. Cifredo Camacho*, abogado del recurrido Carlos M. Carrero; los demás recurridos no comparecieron.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En acción de daños y perjuicios instada el 12 julio, 1973 por los recurrentes De Jesús Díaz, su esposa Diómedes Ortiz y el hijo de ambos Edgardo De Jesús Ortiz, contra Epifanio Ocasio y su esposa Amparo Ferrao, éstos fueron emplazados el 30 julio, 1973; y fechado a 9 agosto, 1973 comparecieron dichos demandados representados por su abogado Sr. Ramón León Malavé mediante moción en la que admiten haber recibido "en su residencia copia de la demanda y del emplazamiento diligenciado por el señor Luis Ramos" mas impugnan la suficiencia del emplazamiento en cuanto al marido y un hijo menor de edad. La citada moción fue radicada el 13 agosto, 1973 en Secretaría del Tribunal Superior de Bayamón y al día siguiente 14 agosto, 1973 los cónyuges demandados Ocasio y Ferrao comparecieron ante su propio abogado en el pleito de daños Lic. Ramón León Malavé en esta ocasión actuando como notario público y otorgaron la escritura Núm. 6 titulada "Constitución de Hipoteca Garantizada por Pagarés" (*sic*) en la que declararon ser dueños y titulares registrales de una parcela de cuerda y media en el Barrio Buena Vista de Bayamón, en la que tienen edificadas dos casas residenciales y un local de negocio en hormigón y bloques y dos estructuras más de madera dedicadas a negocio y arrendadas; que para "obtener crédito" habían emitido ese mismo día doce (12) pagarés al portador iguales, cada uno por principal de $10,000, interés al tipo de 8% anual y fecha de vencimiento común para el 14 agosto, 1977 para un total de $120,000, sin especificación de cuantía líquida para costas y honorarios de abogado en caso de ejecución; y procedieron a constituir hipoteca en garantía de pago de los referidos doce títulos valor.

De las determinaciones del tribunal, admisiones y constancias en autos, surge que el 24 agosto, 1977 la Sala de Bayamón dictó sentencia en el caso de daños por la que condenó a los demandados esposos a pagar $10,000 a los entonces y ahora demandantes, más intereses legales. El

demandado y deudor en daños y perjuicios Epifanio Ocasio falleció al año de la sentencia y los pagarés, que en ninguna parte se dice que hubiesen sido puestos en circulación por los deudores demandados, aparecen ocurrido el deceso, en poder de Carlos M. Carrero, cuñado de la viuda y deudora Amparo Ferrao. La emisión de los doce vales hipotecarios agotaron el patrimonio de los demandados responsabilizados en la sentencia por daños, Epifanio Ocasio y Amparo Ferrao, por lo que los demandantes De Jesús-Ortiz no han podido ejecutarla, a pesar de gestiones ante la Sucesión Ocasio y el tenedor de las obligaciones Carrero, por lo que aquéllos radicaron demanda el 20 diciembre, 1979 para cobrar su crédito en la que alegaron que la emisión de los doce pagarés y la constitución de hipoteca por $120,000 para garantizarlos, así como su entrega por los deudores a su cuñado Carrero fue un esquema de simulación, en perjuicio de los acreedores y efectuada "con el único propósito de frustrar los fines de la justicia y evitar el cobro de la sentencia que recayera en su día". El tenedor de los pagarés Carrero contestó a esto que "entre *efectivo* adelantado y *garantías colaterales*" la sucesión de Epifanio Ocasio le adeuda $34,762.77; que su posesión es legal, y que "su actuación de brindar ayuda económica a [la Sucesión] obedece a un acto legítimo y *humanitario";* y que los pagarés son *"garantía del crédito* otorgado" por él a la sucesión. (Énfasis nuestro.) En la conferencia preliminar entre abogados informó como teoría de defensa contra la acción de nulidad que su posesión de los pagarés es legítima; y que la acción de los demandantes sobre nulidad de hipoteca está prescrita; y al informar su prueba documental no incluyó ni un solo instrumento notarial en resguardo de los casi $35,000 que dice le adeuda la sucesión. ([1])

---

([1]) Transcribimos:

"Prueba documental:

El caso sobre nulidad de hipoteca y fraude de acreedores se llamó a juicio con la sola comparecencia de Carrero, ausentes todos los miembros de la sucesión demandada quienes no contestaron la demanda, hallándose en rebeldía. [2] La sala de instancia al terminar la prueba de los demandantes desestimó su demanda (Regla 39.2 Proc. Civil) basada en dos premisas: 1ra que los demandantes carecen de causa de acción para impugnar como nula y en fraude de acreedores la escritura de hipoteca, por no ser ellos acreedores de los cónyuges hipotecantes a la fecha de su otorgamiento; y 2da que la ejercitada tomada como acción rescisoria había prescrito por disposición del Art. 37 de la anterior Ley Hipotecaria de 1893 (30 L.P.R.A. sec. 62) que le señalaba plazo de un año desde el día de otorgamiento de la escritura.

Hay un escrito de oposición del recurrido Carrero a la expedición del auto en el que nada añade a las conclusiones del magistrado que no sea la referencia por primera vez a la insuficiencia de la prueba que establezca en principio el derecho de los demandantes a un remedio, y pase el *onus probandi* al demandado tenedor de los pagarés. Resolvemos a tenor de la Regla 50 de nuestro Reglamento.

---

*Parte demandante:*

.    .    .    .    .    .    .    .    .
.    .    .    .    .    .    .    .    .

*Parte demandada* (Co-demandado Carlos M. Carrero)

1. Libreta de ahorro
2. Recibos de la Sucesión
3. Documentos del Tribunal en casos de fianza
4. Cualquier otro se notificará oportunamente."

[2] La Regla 45.1 de Procedimiento Civil da por admitidas las aseveraciones de las alegaciones afirmativas, como efecto de la anotación de rebeldía, pero el juez de instancia consideró su deber relevarlos de dicha consecuencia después de comprobación de lo aseverado, extremo innecesario toda vez que la prueba documental admitida sin oposición, (expediente del pleito en que recayó sentencia en 1977, pagarés y escritura de constitución de hipoteca) y las admisiones de Carrero en autos establecieron un caso prima facie de conducta dolosa y fraudulenta.

La apertura del remedio justo en materia de fraude de acreedores, ha sido la ruta de evolución en el desarrollo del derecho moderno, encaminada hacia el fortalecimiento del deber jurídico plasmado en el Art. 1811 del Código Civil: del cumplimiento de las obligaciones responde el deudor, con todos sus bienes presentes y futuros; el Art. 1064: los acreedores después de haber perseguido los bienes de que esté en posesión el deudor, pueden impugnar los actos que éste haya realizado en fraude de su derecho; en el Art. 1250: el que hubiese adquirido de mala fe las cosas enajenadas en fraude de acreedores, deberá indemnizar a éstos de los daños y perjuicios que la enajenación les hubiese ocasionado, siempre que por cualquier causa le fuere imposible devolverlas; y en la presunción ordenada en el Art. 585: se presumirá siempre hecha la donación en fraude de los acreedores, cuando al hacerla no se haya reservado el donante bienes bastantes para pagar las deudas anteriores a ella; y en las del Art. 1249: se presumen celebrados en fraude de acreedores todos aquellos contratos por virtud de los cuales el deudor enajenare bienes a título gratuito. También se presumen fraudulentas las enajenaciones a título oneroso, hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia, o expedido mandamiento de embargo de bienes.

El recurso procesal tradicional lo ha sido la acción rescisoria, conocida como pauliana o revocatoria provista en el Núm. 3 del Art. 1243 del Código: son rescindibles los contratos celebrados en fraude de acreedores, cuando éstos no puedan de otro modo cobrar lo que se les debe.

■ Mas el recurso del acreedor a la impugnación de actos fraudulentos y simulados que tiendan a crear una insolvencia aparente, no está aprisionado por las presunciones de fraude del Art. 1249, que según tiene declarado el Tribunal Supremo de España son independientes, y no impiden el que por otros medios probatorios se pueda

declarar la existencia del mismo, cuya apreciación como cuestión de hecho es de la exclusiva competencia del juzgador de instancia. (³) Estas dos presunciones *juris tantum* relativas a las enajenaciones a título gratuito y oneroso respectivamente no agotan los casos posibles de fraude, siendo muchos más los motivos que vician de fraude el contrato; pues como sostiene *Manresa*, "las formas y medios de que la mala fe se vale son difíciles de prever y señalar anticipadamente, y en todo caso el definirlas con límites precisos, ofrecería el inconveniente de favorecer a aquélla con la impunidad si sabía revestir apariencias distintas de las que el legislador prevé". *Comentarios al Código Civil Español*, 4ta ed., 1929, T. 8, pág. 688. (⁴)

■ Cuando su criterio se ejerce libre de la imposición de la presunción legal, una vez acreditado el hecho base, queda la cuestión remitida al buen sentido (⁵) del juzgador en el que deben pesar los más poderosos indicios de fraudulencia, como la festinación en la enajenación, la insolvencia del deudor, sus relaciones de parentesco, intimidad o de confianza con el adquirente, el estado de los negocios del dueño trasmitente y de las reclamaciones judiciales contra él pendientes. Concurre Castán Tobeñas en que el fraude puede probarse por medios distintos a los

---

(³) Ss. de 31 mayo 1928, 18 mar. 1929 y 23 feb. 1934.

(⁴) Y sobre esta amplitud y las pruebas tan variadas del fraude, añade:

"Reina, por consiguiente, gran amplitud en esta materia, y cabe alegar infinitas presunciones *ab homine*, con la lógica diferencia, respecto a las legales, de que en éstas acreditado el hecho base, la aplicación de los preceptos del Código o de la ley Hipotecaria se impone al juzgador, so pena de que estime aquellas presunciones desvirtuadas por una prueba contraria, lo cual es muy difícil; y en cambio para las otras presunciones de fraude no establecidas por la ley goza de la ordinaria amplitud en cuanto a la apreciación del hecho base y de su conexión con el fraude, del que se pretende sea demostración. La amplitud de facultades en los Tribunales para rechazar estas presunciones particulares es tan amplia como para admitirlas, y está reconocida por la sentencia de 21 de Marzo de 1900." Pág. 688.

(⁵) S. de 10 de julio, 1896. Manresa, *op. cit.*, págs. 688–689.

establecidos en el Art. 1.297 (1249 P.R.) y que la apreciación del fraude, como cuestión de mero hecho, es facultad de la sala sentenciadora. *Derecho Civil Español*, 10ma ed., 1967, T. 3, pág. 238. [6]

■    Según Díez-Picazo, el Art. 1.291 (1243 P.R.) exige que se den dos condiciones para que el acto o negocio pueda ser rescindido: que se haya realizado en "fraude de acreedores" y que éstos "no puedan de otro modo cobrar lo que se les deba"; dos presupuestos de la acción revocatoria, la insolvencia del deudor y el fraude. La insolvencia supone incapacidad del patrimonio para soportar todas las deudas que sobre él pesan; el fraude no requiere prueba de designio o propósito del deudor de perjudicar a sus acreedores, basta demostrar que conoció el resultado producido. *Fundamentos del Derecho Civil Patrimonial*, 1ra ed., 1979, T. 1, págs. 744–745.

No es preciso —reitera Castán Tobeñas— según la doctrina científica, que se dé y se pruebe la *intención* de perjudicar a los acreedores (*animus nocendi*); basta la *previsión* o *conocimiento* de que con el acto que va a realizar el deudor

---

[6] Díez-Picazo también reconoce dos hipótesis: una cuando el comportamiento fraudulento del acreedor encaja en uno de los moldes típicos de la acción revocatoria o pauliana; y la otra cuando el subterfugio o escamoteo de bienes por el deudor para no pagar sus deudas sigue un curso peculiar de evasión de la ley y el deber. Expresa:

"La protección del acreedor frente al fraude del deudor puede ser establecida en dos líneas diferentes. La primera se realiza a través del ejercicio de las acciones típicas de objetiva defensa y tutela de los intereses de los acreedores (acción revocatoria, rescisoria y pauliana). La segunda, subsidiaria de la anterior, se produce mediante la aplicación de la regla general de la inadmisibilidad del fraude de la ley; con ella se trata de obtener la irrelevancia y la ineficacia de todos aquellos actos del deudor que, sin encajar dentro del marco de las acciones revocatorias típicas, están presididos por un designio consciente de perjudicar el derecho de los acreedores y al mismo tiempo entrañan una *circunventio legis*; al amparo de una supuesta ley de cobertura se trata de vulnerar la norma que establece la responsabilidad universal del patrimonio del deudor (art. 1911 C.C. [1811 P.R.]): Dicho de otro modo, el ordenamiento jurídico puede reaccionar calificando como fraude de la ley los actos del deudor realizados con la finalidad de lesionar el derecho de crédito." *Fundamentos del Derecho Civil Patrimonial*, 1979, Vol. 1, pág. 741.

imposibilita el que el acreedor pueda hacer efectivo su crédito. (Énfasis del autor.) *Op. cit.*, pág. 238.

■ Nuestra jurisprudencia va a la par con la doctrina enunciada. En *Carrasquillo* v. *Lippitt & Simonpietri, Inc.*, 98 D.P.R. 659, 662 (1970), y en *García López* v. *Méndez García*, 102 D.P.R. 383, 386 (1974), abandonamos la calificación de prueba "sólida", "clara y convincente" e "incontestable" de *The Texas Co.* v. *Estrada y Álvarez*, 50 D.P.R. 743, 747–748 (1936), para advertir que la regla general de que el fraude no se presume solo significa que aquél que lo afirma debe probarlo con certeza razonable, con preponderancia de prueba que satisfaga la conciencia del juzgador. Fue así derribada una muralla de mayor exigencia en el grado de prueba que no servía otro propósito que dar una protección especial a los agentes de fraude que no tienen los demás demandados. En *Roig Commercial Bank* v. *Portela*, 52 D.P.R. 647 (1938), al destacar la diferencia entre la acción rescisoria pauliana y la de nulidad radical basada en la simulación que nunca prescribe, consideramos fraudulentas en perjuicio de acreedores las enajenaciones hechas por el deudor con proximidad al otorgamiento de un mero pagaré en sustitución de otros vencidos e impagados. En armonía con la corriente que preconiza la fulminación del fraude, sin que se llegue a determinarlo por simples conjeturas, dijo este Tribunal:

Hemos considerado la demanda y aunque nominalmente se titula como de "rescisión" de contrato, llegamos a la conclusión de que debe ser considerada como una que primordialmente trata de dejar sin efecto o deshacer una transacción celebrada ficticiamente por el deudor del demandante y otros, con la intención fraudulenta de impedir que el demandante recobre lo que se le debe. La corte inferior, no sin justificación alguna, aplicaba lo que ella consideró ser el único estatuto bajo el cual podía instruirse el pleito, mas creemos que su decisión a este respecto debe ser revocada. Las cortes existen primordialmente con el fin de hallar un remedio para un daño legal. Esto es especialmente cierto en

casos de fraude, cuando las simpatías del juzgador deben estar con la persona defraudada, de suerte que no debe privársele de su derecho por algún motivo realmente técnico, como por ejemplo, el intitular su demanda indebidamente, cuando aparece que ella aduce suficientes hechos de los cuales se puede establecer una causa de acción definitiva a su favor. Pág. 651.

Se ratificó la norma de escrutar cada situación sin ataduras técnicas procesales para exponer el fraude, si la evidencia inclina la honrada conciencia y buen sentido del juzgador de hechos, al resolver que no es requisito indispensable a la causa de acción del demandante para anular un traspaso fraudulento, que la deuda u obligación estuviere vencida o fuera exigible en la fecha en que se efectuó la alegada enajenación; se estimó que el fiador demandado en daños por embargo ilegal se constituyó en deudor del afectado por éste, con un deber jurídico de resarcimiento, y que la condición de acreedor quedó fijada desde que se otorgó la fianza a su favor en fecha anterior a la del traspaso cuya nulidad se planteaba y no obstante la falta en esa temprana etapa de una determinación judicial sobre la ilegalidad del embargo; y reiterando la expresión en *Roig Commercial Bank*, supra, de que en casos de fraude las simpatías del juzgador —más propiamente la libre inclinación del arbitrio judicial— deben estar con la persona defraudada, y que aquél debe sobreponerse a los obstáculos técnicos, dijimos:

> La misión principal de las cortes de justicia es proporcionar un remedio legal adecuado para la reparación de cualquier daño que haya sido ilegalmente causado al que ante ellas acude en demanda de auxilio. *Ubi jus, ibi remedium.* Mayor aún debe ser el celo y el cuidado de los tribunales, en el cumplimiento de tan alta misión, cuando se trata de perseguir o de evitar el fraude y la simulación. *Castellón* v. *Padín*, 60 D.P.R. 378, 385–386 (1942).

■ Del parentesco íntimo entre deudor y su primer adquirente, hecho que asoma en una pluralidad de contra-

tos simulados o ficticios en fraude de acreedores, dijo este Tribunal tanto en *The Texas Co.*, ante, como en *Nine* v. *Avilés*, 53 D.P.R. 494, 500 (1938), que aun cuando aislada no es suficiente para adjudicar la fraudulencia del acto o contrato, sí constituye una circunstancia sospechosa que integrada a otras puede conducir la apreciación justa y racional de la prueba a una declaración de nulidad, ([7]) y al menos a transferir el peso de la prueba del demandante al adquirente directo del deudor.

■ Con especial relevancia al caso que nos ocupa, hace Castán el definitivo deslinde entre la acción rescisoria pauliana y la de nulidad radical o absoluta:

> Finalmente, aunque en la práctica sea a veces confundida la Pauliana con la acción de declaración de simulación (a causa de que una y otra constituyen un recurso concedido a los acreedores para revocar aquellos actos del deudor que les colocan en la imposibilidad de hacer efectivos sus créditos), son, en realidad, fundamentalmente distintas, ya que la de simulación es una acción de nulidad o inexistencia. El caso de la acción Pauliana es el del deudor que ha enajenado verdadera, pero fraudulentamente (por regla general, para reemplazar una cosa fácilmente embargable por valores fáciles de ocultar), mientras que el de la acción de simulación es el del deudor que aparenta realizar una enajenación, que, en realidad, no existe o es distinta de la verdaderamente realizada. Al lado de esta diferencia esencial por razón de la naturaleza de cada una de estas acciones, existen

---

([7]) Remontándose a 27 C.J. sec. 717, en *The Texas Co.* v. *Estrada y Álvarez*, supra, a las págs. 750–751, este Tribunal adoptó la siguiente cita, precursora de la remisión de hechos a la facultad estimativa hoy prevaleciente:

"Cuando las partes en el traspaso están emparentadas entre sí, *este hecho, en relación con otros hechos,* puede ser suficiente para levantar una presunción de fraude y transferir el peso de la prueba al cesionario para que establezca la buena fe por su parte al aceptar el traspaso y se ha sostenido que se requiere solamente una prueba ligera para hacer pasar el peso de establecer la buena fe de la transacción. Se levanta una presunción de fraude y se impone el peso de la prueba de buena fe al cesionario, *cuando en conexión con el hecho del parentesco, se han establecido otros hechos, tales como la insolvencia o circunstancias embarazosas de la parte que hizo el traspaso.* (Bastardillas nuestras.)"

entre ellas otras diferencias en orden a las personas que pueden ejercitarlas, a los requisitos que para ello se exigen, a los efectos que producen y a la prescripción. *Derecho Civil Español, Común y Foral,* 10ma ed., 1967, T. 3, pág. 234.

A la luz de la teoría legal esbozada, no hay duda de que los recurrentes establecieron un caso prima facie de nulidad de actuaciones y presunción de fraude de acreedores que transfiere el peso de la prueba al demandado-recurrido Carrero. La forma atropellada en que los deudores esposos Ocasio-Ferrao, ya notificados de la demanda en daños y perjuicios, comparecen ante su propio abogado actuando como notario justo un día después de presentar en el tribunal, no una contestación sobre los méritos de la cosa litigiosa, sino una alegación de insuficiencia de emplazamiento; el admitido parentesco íntimo entre deudores hipotecantes y Carrero; la desproporción en la cuantía de $120,000 a que quedó afecto el único patrimonio de los deudores consistente en 1½ cuerda y estructuras en un barrio de Bayamón; la posible falta de negociabilidad de dichas obligaciones en las que no se garantiza una cantidad específica para costas y honorarios en caso de ejecución; el hecho de que no fueron negociadas ni puestas en circulación —su vencimiento común a cuatro años plazo las hacía poco menos que irredimibles— sino que aparecen todos los doce pagarés en manos del cuñado; la admisión por éste de que no tiene un solo documento notarial en que Ocasio o su sucesión reconozcan el total o parte de los $35,000 que él dice haberles entregado en efectivo en parte y la otra como colaterales de fianzas por motivaciones humanitarias de ayuda al prójimo; el silencio de la sucesión deudora en rebeldía y ausente el día del juicio, son circunstancias y hechos que acusan la existencia de fraude en perjuicio de acreedores, que integran una presunción o estado prima facie de conducta dolosa, de fraude de la ley, que elude el deber jurídico de pagar lo debido mediante un camino indirecto que constituye *grosso modo* un subterfugio.

Erró la sala de instancia al resolver que los demandantes —que al tiempo de constitución de la hipoteca fraudulenta no tenían sentencia a su favor, sino una demanda radicada— no eran acreedores de los esposos Ocasio-Ferrao, consecuencia de confundir esta acción de nulidad radical por inexistencia de contrato con la acción rescisoria gobernada por las presunciones del Art. 1249 del Código Civil. Por igual razón y otras incidió el juzgador al estimar la acción prescrita por el plazo de un año del Art. 62 de la anterior Ley Hipotecaria. 30 L.P.R.A. sec. 62. Tanto éste como su sucesor que es el Art. 108 de la nueva Ley, 30 L.P.R.A. sec. 2358, limitan su efecto a las acciones rescisorias y aun en éstas excluyen de su protección al primer adquirente en la relación fraudulenta. Castán, *op. cit.*, págs. 242–243; Prof. José R. Vélez Torres, *Curso de Derecho Civil*, 1981, T. 4, Vol. 1, pág. 289. No es la ejercitada por los recurrentes la llamada rescisoria o pauliana, y sí la de nulidad absoluta que no tiene término para su ejercicio. Cuando se incurre en simulación, no hay rescisión sino nulidad. Roca Sastre, *Derecho Hipotecario*, 6ta ed., 1968, T. 2, pág. 700; *Roig Commercial Bank* v. *Portela*, supra; *cf. González Rodríguez* v. *Fumero*, 38 D.P.R. 556 (1928); *García López* v. *Méndez García*, supra, pág. 395. La prueba de los demandantes ha vencido la presunción de inocencia, honradez y pureza, atributo congénito, mas quebradizo, de las actuaciones de los hombres.

Con estos antecedentes y fundamentos *se expide el auto, se revoca la sentencia recurrida y se devuelve el pleito a instancia para continuación de procedimientos compatibles.*