JULIO FLECHA TOLENTINO y OTROS, demandantes y recurrentes, *v.* SANTURCE CANGREJEROS, INC. y OTROS, demandados, y PROMOCIONES CANGREJERAS, INC., interventora y recurrida.

*Número:* RE-91-240          *Resuelto:* 4 de agosto de 1994

*Luis E. Laguna Mimoso* y *Nydia Díaz Buxó*, abogados de los recurrentes; *María Teresa Olabarrieta*, abogada de los recurridos.

## SENTENCIA

Vistos los planteamientos y argumentos de las partes, el Tribunal concluye que el contrato firmado el 14 de mayo de 1989 entre Santurce Cangrejeros, Inc. y Promociones Cangrejeras, Inc. se hizo en fraude de los acreedores recurrentes —Julio Flecha Tolentino y su esposa Aurea E. Pérez— para evitar el cumplimiento de la sentencia por estipulación contra Santurce Cangrejeros, Inc. que existía desde el 30 de diciembre de 1986. Véanse: Arts. 1243 y

1249 del Código Civil, 31 L.P.R.A. secs. 3492 y 3498; *De Jesús Díaz v. Carrero*, 112 D.P.R. 631 (1982).

*Se dicta sentencia y se revoca la resolución que anuló el embargo. Este dictamen es sin menoscabo, como alternativa a la rescisión total, de que una vez devuelto el mandato, dentro de quince (15) días, Promociones Cangrejeras, Inc. consigne la suma embargada más intereses al tipo legal correspondiente. Se impone a Santurce Cangrejeros, Inc. y Promociones Cangrejeras, Inc. la suma de mil dólares ($1,000) en honorarios, más las costas del proceso.*

Lo pronunció, manda el Tribunal y certifica el señor Secretario General. El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso. El Juez Asociado Señor Rebollo López disintió sin opinión escrita. La Juez Asociada Señora Naveira de Rodón no intervino.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario General*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Alonso Alonso.

I

El 23 de diciembre de 1983, Santurce Cangrejeros, Inc. y Paisajes del Este, Inc. sortearon, entre los asistentes al juego de béisbol celebrado en el Estadio Juan Ramón Loubriel, Bayamón, un solar de más de una cuerda. Flecha Tolentino resultó agraciado.

El 2 de julio de 1985 Flecha Tolentino y su esposa Aurea E. Pérez, por sí y *ex rel.* su sociedad legal de gananciales,

los demandaron por incumplimiento de contrato y daños y perjuicios. El 30 de diciembre de 1986 —notificada el 5 de enero de 1987— el Tribunal Superior, Sala de San Juan (Hon. Melvin A. Padilla Feliciano, Juez), dictó la sentencia siguiente:

> La codemandada, Santurce Cangrejeros, Inc., acepta entregar y la demandante aceptar, el solar objeto del litigio en el término de siete (7) meses a partir del día de la vista. Esta misma codemandada acepta pagar los gastos legales que conlleve el traspaso del solar a nombre de la parte demandante. Acuerdan las partes que de no poder entregar el solar [sic] la codemandada en el término acordado, *se pagará a la demandante el valor del mismo, estimado en cincuenta mil dólares ($50,000.00)*. Santurce Cangrejeros, Inc. consignará la suma de $75.00 en pago de la comparecencia de tres testigos, a razón de $25.00 para cada uno, por la comparecencia a un señalamiento anterior.
>
> Las partes acordaron que el Tribunal fije los honorarios de abogado. La parte demandante pidió que se tome en consideración que el sorteo que motivó el pleito se celebró hace tres (3) años y su cliente aún no ha recibido su premio—el solar. *La codemandada Santurce Cangrejeros Inc., pidió se tome en consideración que siempre le ha expresado a la demandante que ha de cumplir con su ofrecimiento del sorteo.* De igual forma la codemandada expresó que el incumplimiento hasta esta fecha *se debe a causas fuera de su control*, por cuanto, el terreno donde ubica el solar es motivo de otro pleito, que ha ocasionado que no se libere para poder cumplir a pesar de que la deuda que se reclama en ese otro pleito está paga.
>
> El Tribunal, consideradas las razones de ambas partes, fija los honorarios en $200.00. Se aprueba la estipulación y se dicta sentencia en conformidad con sus términos. Se desestima la demanda con perjuicio en cuanto a la codemandada Paisajes del Este, Inc. (Énfasis suplido.) Apéndice, *Exhibit* VIII, págs. 1–2.

Transcurrió el tiempo y la sentencia no fue satisfecha. El 30 de enero de 1990, a solicitud de Flecha Tolentino, se embargó el dinero recaudado de la venta de boletos del último juego de la serie final, en el cual participó el equipo de Santurce Cangrejeros, como novena local, en la temporada de béisbol 1990–1991. No obstante, subsiguientemente, previa vista evidenciaria, el tribunal (Hon. Carmen

Celinda Ríos, Juez) lo anuló a base del reclamo de la interventora Promociones Cangrejeras, Inc. en cuanto a que el dinero le pertenecía.

Revisamos a petición de Flecha Tolentino.([1])

## II

Sabido es que, en la compraventa, uno de los contratantes se obliga a la entrega de la cosa determinada y el otro a pagar un precio cierto en dinero o signo que lo represente. Art. 1340 del Código Civil, 31 L.P.R.A. sec. 3741. El requisito de precio cierto no conlleva la determinación de la cantidad en el momento de la celebración del contrato; se satisface siempre que no sea necesario un acuerdo posterior para fijarlo. L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II, pág. 287.

Un examen de las cláusulas de los contratos entre Santurce Cangrejeros, Inc. y Promociones Cangrejeras, Inc. revela que la intención fue celebrar una compraventa. Como correctamente señaló el ilustrado tribunal de instancia, mediante las Cláusulas Núm. 3 de ambos contratos, Santurce Cangrejeros, Inc. confirió a Promociones Cangrejeras, Inc. el "derecho de mercadeo y venta de la boletería" durante las temporadas de los años 1989–1990 y 1990–1991. Apéndice, *Exhibit* III, pág. 1. En virtud de la Cláusula Núm. 9, Promociones Cangrejeras, Inc. adquirió el derecho de explotar las trasmisiones de radio y televisión, vallas, venta de *souvenirs* y la cantina. Aunque no se determinó el precio cuantitativamente, se cumplió con el requisito de precio cierto. El precio que ha de ser pagado

---

([1]) Ante nos plantea que erró el tribunal de instancia debido a que: (1) contrario a lo determinado, los contratos entre la demandada Santurce Cangrejeros, Inc. y la interventora Promociones Cangrejeras, Inc. (uno de 14 de marzo de 1989 y el otro de 14 de marzo de 1990) son de servicios y no de compraventa; (2) aún siendo de compraventa, dichos contratos son en fraude de los acreedores o simulados. La interventora Promociones Cangrejeras, Inc. sostiene que adquirió válidamente de Santurce Cangrejeros, Inc. los activos o renglones que se enumeran en los contratos.

por Promociones Cangrejeras, Inc. se puede calcular a base de los pagos periódicos que ésta debe hacer a Santurce (Cláusulas Núm. 24 de los contratos); no requiere un acuerdo posterior de las partes ni se deja al arbitrio de una de éstas. No se cometió el error señalado.

## III

Ahora bien, el Art. 1243 del Código Civil, 31 L.P.R.A. sec. 3492, dispone que los contratos celebrados en fraude de acreedores son rescindibles cuando éstos no puedan cobrar de otro modo lo que se les deba. El Art. 1249 del mismo cuerpo legal establece que se presumen en fraude de acreedores "las enajenaciones a título oneroso hechas por aquellas personas contra las cuales se hubiese pronunciado antes sentencia condenatoria en cualquier instancia o expedido mandamiento de embargo de bienes". 31 L.P.R.A. sec. 3498.

La presunción consignada en el precepto precitado admite prueba en contrario. Ésta no constituye el único método de probar el fraude; es independiente y puede demostrarse por otros medios. *De Jesús Díaz v. Carrero*, 112 D.P.R. 631, 636–637 (1982). Corresponde al juzgador, una vez probado el hecho base, ejercer su discernimiento recto al considerar indicios de fraude tales como: (1) festinación en la enajenación; (2) insolvencia del deudor; (3) relaciones de parentesco, intimidad o confianza con el adquirente y (4) el estado de los negocios del dueño transmitente y de las reclamaciones judiciales pendientes contra él. *De Jesús Díaz v. Carrero*, supra, pág. 637.

Como forma de ineficacia contractual, la rescisión se distingue de la nulidad y anulabilidad por presuponer un contrato inicialmente válido. A tal efecto el Art. 1242 del Código Civil, 31 L.P.R.A. sec. 3491, señala que serán rescindibles —en los casos establecidos por ley— los contratos "válidamente celebrados". D. Espín Cánovas, *Manual de*

*Derecho Civil Español*, 6ta ed. rev., Madrid, Ed. Rev. Der. Privado, 1983, Vol. III, pág. 472. Véase *De Jesús Díaz v. Carrero*, supra, págs. 641–642.

Como remedio, la rescisión se caracteriza por ser una medida *excepcional y subsidiaria*; sólo procede en los casos visualizados en la ley y cuando el "perjudicado carezca de todo otro recurso legal para obtener la reparación del perjuicio". Art. 1246 del Código Civil, 31 L.P.R.A. sec. 3495. Véanse: *De Jesús Díaz v. Carrero*, supra, pág. 638. Díez-Picazo y Gullón, *op. cit.*, pág. 120; Art. 1242 del Código Civil, *supra*.

La legitimación activa en la acción de rescisión por fraude de acreedores o pauliana pertenece al acreedor defraudado y a sus sucesores. La acción se dirige contra el adquirente y el deudor. J. Castán Tobeñas, *Derecho Civil español común y foral*, 15ta ed., Madrid, Ed. Reus, 1988, pág. 299. Consiste primordialmente en obligar al adquirente a devolver con sus frutos lo recibido en virtud del contrato rescindido y, al deudor, a devolver el precio con sus intereses. Art. 1247 del Código Civil, 31 L.P.R.A. sec. 3496. Además, si el adquirente ha procedido de mala fe (esto es, conociendo del fraude) o no puede devolver las cosas enajenadas, queda obligado a indemnizar al acreedor por los daños y perjuicios causados debido a la enajenación. Arts. 1247 y 1250 del Código Civil, 31 L.P.R.A. secs. 3496 y 3499; Castán Tobeñas, *op. cit.*, pág. 299; Díez-Picazo, *op. cit.*, pág 235; Espín Cánovas, *op. cit.*, pág. 475.[2]

---

[2] Aclaramos, no obstante, que en atención a la naturaleza subsidiaria de la acción rescisoria, la doctrina y la jurisprudencia del Tribunal Supremo de España admiten la *rescisión parcial* que ha de detenerse cuando quedan satisfechos los derechos del acreedor perjudicado, ya sea mediante la devolución de bienes suficientes al patrimonio del deudor enajenante donde el acreedor defraudado ha de perseguirlos o porque el adquirente ha optado por hacerlo directamente. Véase Sentencia de 14 de junio de 1958, citada en Bonet Ramón, *op. cit.*, pág. 1018; J. Castán Tobeñas, *Derecho Civil español común y foral*, 15ta ed., Madrid, Ed. Reus, 1988, pág. 300; L. Díez-Picazo y A. Gullón, *Sistema de Derecho Civil*, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II, pág. 300.

# IV

La prueba desfilada revela que en el caso de autos están presentes todos los elementos necesarios para rescindir el contrato entre la demandada Santurce Cangrejeros, Inc. y la interventora Promociones Cangrejeras, Inc. Como expusimos, originalmente se dictó sentencia contra Santurce Cangrejeros el 30 de diciembre de 1986; el contrato implicado se celebró el 14 de marzo de 1989, esto es, más de dos (2) años después. Como los contratos comprenden virtualmente *todas la fuentes de ingreso* de la demandada Santurce Cangrejeros, Inc., la rescisión es el único remedio disponible a los demandantes Flecha Tolentino.[3]

El fraude quedó ampliamente probado. Es claro que cuando Santurce Cangrejeros, Inc., vendió a Promociones Cangrejeras, Inc., los renglones económicos más lucrativos —por no decir únicos— que genera su franquicia, tales como boletos, explotación de la cantina y "souvenirs", vallas, radio transmisión de telemaratón (espacios y anuncios), existía la sentencia *por estipulación* a favor de Flecha Tolentino. Para cualquier persona era evidente que la enajenación de esos renglones le dejaba huérfano, como acreedor, del poder ejecutar su sentencia. No se trata de unos renglones aislados, sino sus mayores fuentes de ingresos.

Procede la sentencia mayoritaria para revocar la resolución que anuló el embargo. Coincidimos también, como alternativa a la rescisión total, que nada obsta para que una vez devuelto el mandato, en el término de quince (15) días, Promociones Cangrejeras, Inc. consigne la suma embargada, más intereses al tipo legal correspondiente.

---

[3] El propio testimonio del Presidente del equipo de Santurce, Lcdo. Reinaldo Paniagua Díez, avala esta conclusión.