**In re EL MUNDO CORPORATION,**
Debtor.

**UNION de PERIODISTAS, Artes Graficas y Ramas Anexas (UPAGRA); on behalf of the Estate, Richard A. Lee, Trustee, Appellants,**

v.

**IRVING PAPER LIMITED, Appellee.**

Civil No. 95–2597 (JAF).
Bankruptcy No. 91–0356 (SEK).
Adv. No. 91–0064.

United States District Court,
D. Puerto Rico.

April 30, 1997.

Brian K. Tester, Richard A. Lee Law Office, San Juan, PR, for Appellants.

Antonio A. Arias–Larcada, McConnell Valdes, San Juan, PR, for Appellee.

## OPINION AND ORDER

### I.

#### Introduction

FUSTE, District Judge.

Appellant, Richard A. Lee, Trustee, appeals from the Bankruptcy Court's decision filed and entered on January 17, 1995, dismissing plaintiff's first cause of action that moved to avoid payment to a creditor because of allegedly fraudulent transfers of property through guarantees. This court has jurisdiction to entertain the present appeal under 28 U.S.C. § 158(a) (1988). After reviewing the Bankruptcy Court's Opinion and Order, appellant's brief, appellee's opposition, and other pertinent court documents, we **AFFIRM** the Bankruptcy Court's decision.

### II.

#### Facts

El Mundo Corporation filed a petition under Chapter 11 of the Bankruptcy Code on January 18, 1991, which was converted to a Chapter 7 liquidation the following month. Irving Paper Limited (Irving) was El Mundo's sole paper supplier for its newsprint from 1988 until it ceased publishing. El Mundo and Irving enacted a series of agreements during the financial decline of the newspaper to keep the supply of newsprint flowing despite their inability to pay for it. In mid–1989, approximately $4,000,000 was owed, of which slightly over half was in arrears. After investigation by Irving, an agreement was reached under which El Mundo issued a promissory note for the $2,013,-000 in arrears, guaranteed by a $1,000,000 bond.

Shortly after this agreement, an injunction was entered against El Mundo to rehire over four-hundred employees, a decision appealed by El Mundo to the highest levels of the National Labor Relations Board (NLRB). El Mundo also started to assign accounts receivable to Irving to maintain the supply agreement necessary for El Mundo's continued production. El Mundo's counsel never informed Irving about the injunction or the suit; rather, it stated that no suits or proceedings were pending or threatened that would affect El Mundo's financial condition or Irving's rights under the agreements. Later that year, El Mundo's finances again took a nosedive. However, with a commitment of fresh funds for El Mundo by its owner and further payments of indebtedness to Irving, Irving agreed to continue the supply relationship without which El Mundo would have ceased publishing. Also to that end, El Mundo executed two personal property mortgages as a guarantee.

Finally, El Mundo wheezed its last breath in December 1990, when its management reported to Irving that it was unable to fulfill its responsibilities. The following month, El Mundo filed for Chapter 11, shortly thereafter converted into a Chapter 7 case.

### III.

#### Analysis

Sitting as an appellate court reviewing decisions of the Bankruptcy Court, we review the Bankruptcy Court's factual findings under a clear error standard, and its conclu-

sions of law under a de novo standard. *In re G.S.F. Corp.*, 938 F.2d 1467, 1474 (1st Cir. 1991); *Matter of Torres López*, 138 Bankr. 348, 349 (D.P.R.1992). The Bankruptcy Court's factual findings may only be characterized as accurate, since the record as a whole supports its findings.

The legal issue presented here is whether Mr. Richard A. Lee, El Mundo's trustee, may block the payment of monies to Irving based on El Mundo's alleged debt due to the NLRB ruling. 31 L.P.R.A. § 3498 serves as the basis for the trustee's attempted avoidance of Irving's receiving the monies owed it. This section, entitled "Contracts Presumed in Fraud of Creditors," states:

> Contracts by virtue of which the debtor alienates property, for [inadequate] consideration,[1] are presumed to be executed in fraud of creditors.
>
> Alienations for valuable considerations, made by persons against whom a condemnator judgment, in any [court],[2] has been previously rendered, or a writ for seizure of property has been issued, shall also be presumed fraudulent.

31 L.P.R.A. § 3498 (1990). The trustee's claim is that Irving knew about the NLRB ruling when it acquired the rights to a substantial part of El Mundo's property. The NLRB ruling, thus, would constitute a condemnatory judgment against El Mundo, which allegedly committed fraud in trying to avoid it by contracting away many of its possessions in exchange for a continued supply of paper from Irving. The existence of a condemnatory judgment creates a presumption of fraud to the third party. *De Jesús Díaz v. Carrero*, 112 D.P.R. 631, 637, 12 O.T.S.C.P.R. 786, 795 (1982). However, the allegation of fraud may be rebutted. *Id.*

This claim holds as little water as it did in the Bankruptcy Court. The Bankruptcy Court found the judgment was condemnatory but that the transfers were not fraudulent. Whether the judgment was condemnatory

holds no import—even against the presumption of fraud, Irving demonstrates ably that the transfers were not fraudulent. Although the Bankruptcy Court held that the NLRB ruling indeed constituted a condemnatory judgment, we are not completely convinced. Although judgment had been entered, the amount of El Mundo's liability was not clear and the decision was under appeal. The case law does not provide clear direction on whether such a judgment may be considered condemnatory under 31 L.P.R.A. § 3498. *See, e.g., Rodríguez v. Soto*, 412 P.R.R. 798 (1931) (holding that a lawsuit does not constitute a condemnatory judgment). However, we do not need to decide this. Even with that presumption, Irving has rebutted any such presumption by demonstrating that the transfers from El Mundo to Irving were not fraudulent.

To assess what Irving must rebut, first we must delineate what is meant by fraud in section 1249 of the Civil Code, 31 L.P.R.A. § 3498. The traditional case of fraud in regards to a creditor is when a debtor transfers money to a third party to avoid paying the creditor. *See, e.g., Simcox v. San Juan Shipyard, Inc.*, 754 F.2d 430, 441 (1st Cir.1985) (discussing the requirements for a presumption of fraud under Puerto Rico law). In evaluating the potential existence of fraud, the following elements must be considered: Haste in the alienation, the debtor's insolvency, the relationship of kinship, closeness or trust with the acquirer, the state of the business of the conveyor owner and of the judicial claims against him. *De Jesús*, 112 D.P.R. at 637.

Overall, the relationship between El Mundo and Irving demonstrates their principal motivation to have been the continuance of their business relationship. First, there was no haste whatsoever in the issuance of the guarantees to Irving. Before the agreement and each amendment, Irving investigated and received assurances of the viability of El

---

1. The English version employs the term "good consideration" where the Spanish uses "título gratuito," which means "as a gift" or "without adequate consideration". *See* 31 L.P.R.A. § 3498 Editorial Note. The Civil Code of Puerto Rico was adapted from the Spanish Civil Code.

Its Spanish text prevails over the English translation. 31 L.P.R.A. § 13.

2. The English version employs the word "instance" as meaning "instancia", which usually refers to a trial court.

Mundo, even visiting the newspaper facilities on one occasion. Second, El Mundo was in difficult financial straits at the time, but it was not insolvent. Third, the relationship between Irving and El Mundo is particularly revealing. Irving was the supplier of an essential element of El Mundo's product: The paper on which it was printed. Their relationship was strictly commercial. The guarantees El Mundo made to Irving were absolutely necessary to continue the paper's publication during those difficult times and forestalled the paper's demise considerably. The agreements served an indubitably legitimate business interest for both parties and in no way reflect any closeness or kinship that might give rise to suspicion. Rather, the ample evidence indicates Irving's actions were based on reasonable assumptions regarding El Mundo's viability, such as its cash flow and the representation of the lack of any liability by court order. Although Irving knew about the NLRB ruling from its prior financial investigations, El Mundo's counsel's representation certainly led them to discount the significance of the judgment. More than Mr. Lee's argument, it would require a funhouse mirror to stretch the Irving–El Mundo business relationship into a fraudulent situation.

## IV.

### Conclusion

Accordingly, we **AFFIRM** the Bankruptcy Court's decision.

**IT IS SO ORDERED.**