ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| FIRSTBANK PUERTO RICO, INC.<br><br>Apelante<br><br>v.<br><br>ÁNGEL CLARO RAMALLO DÍAZ; MARÍA AGUSTINA YLLANES NOVO; LA SOCIEDAD LEGAL DE BIENES GANANCIALES COMPUESTA POR AMBOS; LATINO TRUST<br><br>Apelados | KLAN202500053 | *Apelación,* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2020CV04098<br><br>Sobre: Acción Pauliana |

Panel integrado por su presidente, el Juez Figueroa Cabán, el Juez Salgado Schwarz y el Juez Monge Gómez

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de marzo de 2025.

Comparece FirstBank Puerto Rico, Inc., en adelante FirstBank o el apelante, y solicita que revoquemos la *Sentencia* que emitió el Tribunal de Primera Instancia, Sala de San Juan, en adelante TPI, el 12 de noviembre de 2024.[1] Mediante dicho dictamen, el tribunal primario desestimó de forma sumaria la acción en fraude de acreedores que presentó FirstBank contra Ángel Claro Ramallo Díaz, María Agustina Yllanes Novo, la Sociedad Legal de Gananciales compuesta por ambos, en adelante matrimonio Ramallo-Yllanes, y Latino Trust, en adelante Trust, en conjunto los apelados.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada.

---

[1] La *Sentencia* fue notificada, registrada y archivada en autos el 13 de noviembre de 2024.

Número Identificador

RES2025_____

**-I-**

Surge del expediente, que el 25 de febrero de 2014 FirstBank presentó una *Demanda* de cobro de dinero e incumplimiento de contrato contra el matrimonio Ramallo-Yllanes. Alegó que el 30 de diciembre de 2002, aquel suscribió un préstamo con el apelante para la adquisición de una embarcación de lujo que posteriormente dejó de pagar.[2]

Luego de varios trámites, el 31 de abril de 2017 el TPI dictó *Sentencia* mediante la cual condenó al matrimonio Ramallo-Yllanes al pago de la suma de $337,795.05.[3] Esta *Sentencia* advino final y firme.

Sostuvo, además, el apelante, que no ha podido cobrar su acreencia debido a que el matrimonio Ramallo-Yllanes donó sus bienes antes de cumplir su obligación, sin reservar bienes suficientes para cumplir con sus deudas. A su entender, esto constituye fraude de acreedores.[4]

A la luz de lo anterior, FirstBank solicitó la nulidad de todas las donaciones al Trust o, en la alternativa, que se ordenara a este responder por la deuda contraída, conforme dispone el Art. 585 del Código Civil de 1930.[5]

Tanto el matrimonio Ramallo-Yllanes como el Trust presentaron las correspondientes contestaciones a la *Demanda*.[6] En esencia, negaron las alegaciones de fraude de acreedores y afirmaron que las donaciones se hicieron conforme a derecho y para los fines y propósitos del Trust.[7]

---

[2] Apéndice del apelante, pág. 1-6.
[3] *Id.*
[4] *Id.*
[5] *Id.*
[6] Apéndice del apelante, págs. 7-21.
[7] *Id.*

Como defensas afirmativas, el Trust invocó, entre otras, que conservó bienes suficientes para cumplir sus obligaciones; que el fiduciario tiene amplias facultades para buscar el mejor interés del Trust; y que los bienes del Trust no se pueden usar para pagar deudas ajenas al mismo.

Por su parte, el matrimonio Ramallo-Yllanes levantó, en esencia, las mismas defensas afirmativas que el Trust.

En dicho contexto procesal, el Trust presentó una *Solicitud de Sentencia Sumaria* en la que adujo, entre otras cosas, que FirstBank no presentó prueba que estableciera que, al momento de autorizar las escrituras de donación, el matrimonio Ramallo-Yllanes se encontraba insolvente, de forma que se pudiera presumir fraude a acreedores.[8] Además, sostuvo, que hizo reserva de bienes conforme dispone nuestro ordenamiento jurídico.

Oportunamente, FirstBank presentó su *Oposición a Solicitud de Sentencia Sumaria de Latino Trust y Solicitud de Sentencia Sumaria a favor de FirstBank*. En síntesis, arguyó que de la prueba documental y de las admisiones del señor Ramallo se puede deducir que las donaciones al Trust se hicieron con la intención de impedir que FirstBank pudiera cobrar su acreencia.[9] Recalcó, además, que fue a raíz de la constitución del Fideicomiso que el matrimonio Ramallo-Yllanes advino insolvente.

Así las cosas, el TPI dictó una *Sentencia* en la que desestimó con perjuicio la *Demanda* y en lo pertinente determinó:

> En este caso, no existe controversia sobre que, previo a que FirstBank instara su demanda en cobro de dinero contra los esposos Ramallo Yllanes, éstos ya habían donado varias de las propiedades a Latino Trust. Asimismo, no existe controversia de que, el préstamo se produjo en el

---

[8] *Id.*, págs. 22-62.
[9] *Id.*, págs. 63-167.

2002 y el Fideicomiso se constituyó en 2012. Surge de las escrituras de donación que, los esposos Ramallo Yllanes al otorgarlas expresaron que habían hecho la necesaria reserva de bienes para sí. A diferencia de las donaciones otorgadas al fideicomiso, el apartamento en que vive[n] los esposos Ramallo Yllanes fue una compraventa por Latino Trust. En este caso, la mayoría de las donaciones se hicieron incluso antes de la presentación de la demanda incoada por Firstbank hacia los esposos Ramallo Yllanes por cobro de dinero. Siendo así, no procede la nulidad de las escrituras de donación bajo el argumento de que constituyeron contratos en fraude de acreedores.

Insatisfecho, FirstBank presentó una *Solicitud de Reconsideración; de Enmienda y Determinaciones de Hecho Adicionales*,[10] a la que se opuso el Trust,[11] y que el TPI declaró "No ha lugar"[12].

Aún inconforme, el apelante presentó un recurso de apelación en el que alega que el TPI cometió los siguientes errores:

COMETIÓ GRAVE ERROR Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A APLICAR LA PRESUNCIÓN LEGAL QUE ESTABLECE QUE TODA DONACIÓN GRATUITA REALIZADA POR UN DEUDOR ANTES DE PAGARLE A SU ACREEDOR SE PRESUME EN FRAUDE DE ACREEDORES Y, POR EL CONTRARIO, LE TRANSFIRIÓ LA CARGA PROBATORIA A FIRSTBANK CUANDO DEBIÓ HABERLES EXIGIDO A LOS APELADOS PRESENTAR PRUEBA QUE REBATIERA TAL PRESUNCIÓN.

COMETIÓ GRAVE ERROR Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL NEGARSE A ENMENDAR Y/O INCLUIR DETERMINACIONES DE HECHO ESENCIALES QUE FUERON PROBADOS.

Luego de examinar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional, que tiene el propósito de facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y que, por lo tanto, no ameritan la celebración de una vista en su fondo.[13] Se trata de un

---

[10] *Id.*, págs. 185-195.
[11] *Id.*, págs. 196-201.
[12] *Id.*, págs. 202-203.
[13] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277-279 (2021); *Meléndez González, et als. v. M. Cuebas*, 193 DPR 100, 110-113 (2015); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594 (2013); *Ramos Pérez v. Univisión de PR*, 178 DPR 200, 213 (2010).

mecanismo para aligerar la tramitación de un caso, cuando de los documentos que acompañan la solicitud surge que no existe disputa sobre algún hecho material y lo que procede es la aplicación del derecho.[14]

Conviene destacar que un hecho material "es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable".[15] En particular, el Tribunal Supremo de Puerto Rico, en adelante TSPR, ha declarado que las controversias sobre hechos irrelevantes o innecesarios son insuficientes para derrotar una moción de sentencia sumaria. De modo, que para lograr dicho objetivo la controversia sobre un hecho material tiene que ser real.[16] Es decir,

> … debe ser de una calidad suficiente como para que sea necesario que un juez la dirima a través de un juicio plenario. La fórmula, debe ser, por lo tanto, que la moción de sentencia sumaria adecuadamente presentada sólo puede negarse si la parte que se opone a ella presenta una oposición basada en hechos que puedan mover a un juez a resolver a su favor.[17]

Por otro lado, el TSPR ha destacado que no es recomendable utilizar la moción de sentencia **en aquellos casos donde exista controversia sobre elementos subjetivos, de intención, propósitos mentales o negligencia**; incluso, cuando el factor de credibilidad es esencial y está en disputa.[18] Esto no impide, sin embargo, utilizar el mecanismo de sentencia sumaria en reclamaciones que requieren elementos subjetivos o de intención, cuando de los documentos comprendidos surge que

---

[14] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, *supra*; *Meléndez González, et als. v. M. Cuebas*, *supra*; *Ramos Pérez v. Univisión de PR*, *supra*, pág. 214.

[15] *Ramos Pérez v. Univisión*, *supra*, (citando a J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2000, T.I, pág. 609).

[16] (Citas omitidas). *Id*.

[17] *Id*., págs. 213-214, citando a P.E. Ortiz Álvarez, *Hacia el uso óptimo de la sentencia sumaria*, 3 (Núm. 2) Forum 3, 8 (1987).

[18] *Ramos Pérez v. Univisión, supra*, pág. 219. (Énfasis suplido). Véase, además, *Soto v. Hotel Caribe Hilton*, 137 DPR 294 (1994).

no existe controversia en cuanto a los hechos materiales.[19]

Finalmente, en *Meléndez González, et als. v. M. Cuebas, supra,* el TSPR estableció el estándar específico que debe utilizar el Tribunal de Apelaciones para revisar una sentencia sumaria dictada por el Tribunal de Primera Instancia:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> **Segundo***,* por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.
>
> **Tercero***,* en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos*. Esta determinación puede hacerse en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.
>
> **Cuarto***,* y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[20]

---

[19] *Id*.
[20] *Meléndez González, et als. v. M. Cuebas*, *supra*, págs. 118-119. (Énfasis en el original).

**B.**

El Artículo 1811 del Código Civil de 1930[21] establece que "[d]el cumplimiento de las obligaciones responde el deudor con todos sus bienes presentes y futuros"[22].

De modo, que en aras de proteger el tráfico jurídico, nuestro ordenamiento concede a los acreedores varios medios que permiten conservar o tutelar la garantía patrimonial de su deudor y contribuyen a asegurar las posibilidades de cobro de su derecho de crédito.

A esos fines, el Artículo 1064 del Código Civil dispone que luego de perseguir los bienes del deudor, el acreedor puede, entre otros remedios, "impugnar los actos que el deudor haya realizado en fraude de su derecho".[23]

En lo aquí pertinente, como regla general, el fraude de acreedores no se presume, con excepción de las enajenaciones hechas a título gratuito.[24] Esta presunción admite prueba en contrario,[25] o lo que es lo mismo, que el deudor tiene la carga de probar que, en efecto, enajenó a título oneroso.

Conviene destacar, que cuando una donación se haya constituido en fraude de acreedores, nuestro ordenamiento jurídico provee un mecanismo para exigir al donatario el pago correspondiente. Bajo este supuesto, una donación se presume en fraude de acreedores "cuando al hacerla no se haya reservado el donante bienes bastantes para pagar las deudas anteriores a ella".[26] En este contexto, "el fraude

---

[21] 31 LPRA sec. 5171. Hacemos referencia a las disposiciones del Código Civil de 1930, derogado, por razón de que los hechos del caso de epígrafe surgieron bajo su vigencia. Véase, Art. 1808 del Código Civil de 2020, 31 LPRA sec. 11713.
[22] *De Jesús Díaz v. Carrero*, 112 DPR 631, 637 (1982). Las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitas en que intervenga cualquier género de culpa o negligencia. Art. 1042 del Código Civil, 31 LPRA sec. 2992.
[23] 31 LPRA sec. 3028.
[24] Art. 1249 del Código Civil, 31 LPRA sec. 3498.
[25] *Id.* Véase, también, *Peña v. Mendoza,* 60 DPR 110 (1942).
[26] Art. 855 del Código Civil de 1930, 31 LPRA 2030.

no requiere prueba de designio o propósito del deudor de perjudicar a sus acreedores…".[27] Por el contrario, el estándar es más flexible, a saber, "basta demostrar que conoció el resultado producido".[28] En otras palabras, para probar la intención de perjudicar a los acreedores "basta la previsión o conocimiento de que con el acto que va a realizar el deudor imposibilita el que el acreedor pueda hacer efectivo su crédito".[29]

## -III-

FirstBank considera que estableció los hechos necesarios para activar la presunción de que las donaciones realizadas a Latino Trust eran en fraude de acreedores. Bajo este escenario, correspondía a aquel rebatir la existencia del hecho presumido. Como no lo hizo, el TPI tenía la obligación de declarar con lugar la demanda y conceder los remedios solicitados.

En cambio, Latino Trust arguye que no se activó el hecho base de la presunción a los efectos de que las donaciones se realizaron en fraude de acreedores. Esto es así, porque al momento de la donación, el matrimonio Ramallo-Yllanes reservó bienes suficientes para pagar las deudas contraídas antes de su otorgamiento y además, FirstBank no probó que aquel estaba insolvente al momento de las donaciones.

Conforme al mandato jurisprudencial y legislativo, corresponde revisar *de novo* y de la manera más favorable a la parte que se opone a la petición de despacho sumario,

---

[27] L. Diez-Picazo, *Fundamentos del Derecho Civil Patrimonial*, 1.ª ed., 1979, T. I, págs. 744-745 (citado en *De Jesús Díaz v. Carrero*, 112 DPR 631, 637-638 (1982)).
[28] *Id*.
[29] J. Castán-Tobeñas, Derecho Civil Español, 10.ª ed., 1967, T. III, pág. 238 (citado en *De Jesús Díaz v. Carrero*, 112 DPR 631, 638 (1982)).

tanto las solicitudes de sentencia sumaria como la totalidad del expediente.

Como cuestión de umbral, la *solicitud de Sentencia Sumaria* de Latino Trust cumplió cabalmente con los requisitos de forma de la Regla 36.3 de Procedimiento Civil, *supra*. En cambio, no podemos decir lo mismo de la *Oposición a Solicitud de Sentencia Sumaria de Latino Trust* y *Solicitud de Sentencia Sumaria a favor de FirstBank*. Por el contrario, esta contiene varias desviaciones de las exigencias de forma reconocidas en nuestro ordenamiento procesal civil y su jurisprudencia interpretativa.

Establecido lo anterior, procede determinar si existen hechos esenciales en controversia que impidan resolver el presente pleito mediante sentencia sumaria. Contestamos en la afirmativa. El hecho esencial sobre el cual hay controversia es **si al momento de efectuar la donación a Latino Trust, el matrimonio Ramallo-Yllanes reservó bienes "bastantes para pagar las deudas anteriores a ella".**[30] Veamos.

Surge del expediente que en las Escrituras 11 y 12 de Donación autorizadas en el año 2012, el matrimonio Ramallo-Yllanes **declaró ante notario** que tenía "otras propiedades, negocios y bienes que se han reservado que equivalen a más de los necesarios para vivir en un estado correspondiente a sus circunstancias".[31]

Dos años más tarde, en la Escritura 8 de Donación el matrimonio Ramallo-Yllanes, bajo la solemnidad que reviste la declaración de un otorgante en un instrumento público, reiteró "…que han hecho reserva para sí de bienes suficientes de forma tal que tras la donación hecha

---

[30] Art. 585 del Código Civil de Puerto Rico, 31 LPRA Sec. 2030.
[31] Apéndice del apelante, págs. 45 y 54.

conservan suficientes bienes para vivir en un estado correspondiente a sus circunstancias y que dichos medios y bienes son suficientes para pagar sus deudas".[32]

Sin embargo, en la deposición del 18 de mayo de 2019, trámite de descubrimiento de prueba juramentado, el señor Ramallo declaró "[t]odo lo perdí hasta el negocio…"[33] y que los ingresos mensuales del matrimonio Ramallo-Yllanes ascienden a $3,900 procedentes del "Social Security"[34].

De lo anterior, es forzoso concluir que estamos ante una controversia que involucra cuestiones de credibilidad, que justifica que un juez la dirima en un juicio.[35]

Esto es suficiente para denegar la solicitud de adjudicación sumaria de la presente controversia. Pero hay más.

Para hacer justicia en el presente caso hay que enfatizar el aspecto sustantivo de la validez de las donaciones sobre el aspecto formal de la figura jurídica del fideicomiso. Al adoptar este enfoque se desvanece la posibilidad de resolver sumariamente la presente controversia. Esto es así, porque al tener que adjudicar si las donaciones son nulas porque se hicieron en fraude de acreedores, se entra en el ámbito de las presunciones, de la intención y de los estados mentales, asuntos que deben dilucidarse en un juicio plenario.[36] En otras palabras, si hay que probar que el matrimonio Ramallo-Yllanes tenía que "prever" o "conocer" que con las donaciones al fideicomiso imposibilitaba a FirstBank

---

[32] *Id.* pág. 61.
[33] *Id.* pág. 90.
[34] *Id.* pág. 95.
[35] *Id.*, págs. 45-54.
[36] *Supra.*

cobrar su deuda,[37] estamos fuera del despacho sumario, pero dentro de un juicio plenario.

Finalmente, conforme al mandato de la Regla 36.4 de Procedimiento Civil determinamos que *existe controversia sobre si el matrimonio Ramallo-Yllanes reservó bienes suficientes para pagar sus deudas.*

En cambio, la totalidad de los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, que presentaron las partes tanto en la *Solicitud de Sentencia Sumaria* como en la *Oposición a solicitud de Sentencia Sumaria de Latino Trust* y *Solicitud de Sentencia Sumaria a Favor de FirstBank*, no están en controversia.

-IV-

Por los fundamentos que anteceden, se revoca la *Sentencia* apelada y se devuelve el caso al Tribunal de Primera Instancia para la celebración del juicio plenario conforme a lo establecido en la presente sentencia.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[37] *De Jesús Díaz v. Carrero, supra,* págs. 638-639.