378

RoBERTo Castellón, demandante y apelante, v. Carmen Padín, Prudencio Collazo, Joaquín Padín y Tobaldo Casanova Prats, demandados y apelados.

Núm. 8410.—*Sometido:* Abril 29, 1942. *Resuelto:* Mayo 18, 1942.

*Ortiz Toro & Ortiz Toro,* abogados del apelante; *Celestino Iriarte, F. Fernández Cuyar* y *H. González Blanes,* abogados del señor Casanova Prats, apelado; *A. Casanova Prats,* abogado de Carmen y Joaquín Padín, apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

José Segarra demandó en cobro de dinero a Roberto Castellón. Decretado el embargo de bienes, Joaquín Padín y Carmen Padín otorgaron en junio 11 de 1937 una fianza por $3,000, comprometiéndose a responder "de los daños y perjuicios que puedan irrogarse al demandado Roberto Castellón en el caso de resolverse en definitiva no haber lugar a fallo en dicho pleito en contra del demandado."

En septiembre 15, 1937 la Corte de Distrito de San Juan desestimó la demanda interpuesta por Segarra contra Castellón, quedando firme la sentencia por no haberse entablado recurso alguno de apelación o revisión.

En julio 10, 1939 Roberto Castellón inició el presente litigio mediante demanda en la que alegaba que los fiadores Carmen y Joaquín Padín simuladamente, sin que mediara causa alguna y con el propósito de defraudar al demandante, como su acreedor, habían traspasado las casas de que respectivamente eran dueños al demandado Teobaldo Casanova Prats, mediante escritura pública de julio 2 de 1937, quedando por virtud de tal traspaso en estado de insolvencia y sin otros bienes sobre los cuales pudiera hacerse efectiva la fianza. Pedía el demandante que se declarase nula la escritura y rescindido el traspaso.

Contestaron los demandados y entre otras defensas alegaron que los hechos expuestos en la demanda eran insuficientes para constituir causa de acción. Llamado el caso para juicio y discutida la excepción previa, la corte inferior la declaró con lugar "por no alegarse en la demanda que al tiempo de la alegada enajenación el demandante era acreedor de los demandados o que no (sic) existiera alguna deuda a favor del mismo", concediendo al demandante un término de diez días para enmendar su demanda. En la demanda enmendada, radicada el 20 de marzo de 1941, el demandante alegó:

"6. Que los aquí demandados, Joaquín Padín y Carmen Padín, en virtud del otorgamiento de dicha fianza y de dichos daños y perjuicios sufridos por el aquí demandante, Roberto Castellón, están adeudando al aquí demandante la suma de tres mil dólares ($3,000), y en cobro de cuya suma el aquí demandante ha establecido una demanda en esta misma corte, bajo el número 32,159 contra los aquí demandados Joaquín Padín, Carmen Padín y Prudencio Collazo.

"10. Que al tiempo de verificarse dicha enajenación . . . . . . el demandante Roberto Castellón era acreedor de los demandados Joaquín Padín, Carmen Padín y Prudencio Collazo, en la cantidad a que ascendieran los daños y perjuicios que se le causaran al demandante en este caso, por virtud del embargo trabado . . . . por haber firmado los demandados Joaquín Padín, Carmen Padín y Prudencio Collazo, una fianza a favor de Roberto Castellón, . . . . . ., para que se trabase embargo. . .".

La corte inferior sostuvo una excepción previa formulada contra la demanda enmendada, basada en la alegada insuficiencia de hechos, por los motivos de que "No hay alegación de que dicha fianza haya sido liquidada o de cuáles fueron los daños sufridos por el demandante con motivo de tal embargo" y de que "Los hechos alegados en la demanda enmendada no demuestran que el demandante fuera acreedor de los demandados al iniciarse esta acción o en momento alguno, requisito éste indispensable en acciones de la naturaleza de la que aquí se ejercita." Y estimando que la demanda no era susceptible de nuevas enmiendas, dictó sentencia en junio 24, 1941 declarando sin lugar la demanda. En julio 1, 1941 el demandante solicitó la reconsideración de la sentencia y pidió permiso para radicar una segunda demanda enmendada. Declaradas sin lugar ambas peticiones, el demandante estableció el presente recurso. Para sostenerlo, imputa a la corte inferior la comisión de doce errores, los que consideraremos como si se tratara de uno solo, pues todos ellos giran alrededor de la única cuestión fundamental envuelta en el caso, la que formularemos así: ¿Tenía el demandante Castellón, desde el momento en que fué constituída la fianza a su favor, la condición de acreedor de sus fiadores,

con derecho, como tal acreedor a solicitar la rescisión y nulidad del alegado traspaso fraudulento de sus bienes, hecho por los fiadores, con el propósito de evadir la obligación de indemnizarle por los daños y perjuicios que pudiera causarle el embargo?

Antes de comenzar a considerar la cuestión planteada, fijemos como fechas importantes: (1) junio 11, 1937, en que se constituyó la fianza y se practicó el embargo; (2) julio 2, 1937, en que se otorgó el alegado traspaso fraudulento; y (3) septiembre 15, 1937, en que se dictó la sentencia desestimando la demanda interpuesta por Segarra contra Castellón y quedó nulo y sin efecto el embargo garantizado por la fianza otorgada por los demandados Padín.

La jurisprudencia de esta Corte Suprema, citada por la corte inferior como base de la sentencia y resolución recurridas, no ha sido, a nuestro juicio, correctamente aplicada a los hechos y circunstancias del caso de autos.

En *Sucn. Almazán* v. *López, et al.,* 20 D.P.R. 537 se pidió, de acuerdo con el artículo 1258 del Código Civil de 1911 (Art. 1243 C.C. 1930), la rescisión de un contrato de venta de un condominio en una finca, por haber sido celebrado en fraude del acreedor demandante. Esta Corte Suprema al resolver que la demanda era suficiente, sentó la regla de que:

" . . . es indudable que en una acción de la naturaleza de la ejercitada en este caso debe aparecer de la demanda: (*a*) que el demandado es realmente deudor del demandante; (*b*) que el demandado enajenó sus bienes, en fraude de su acreedor; (*c*) que el demandante ha sido perjudicado por tal enajenación, y (*d*) que el demandante no tiene otro recurso legal para obtener la reparación del perjuicio sufrido, que pedir la rescisión del contrato de enajenación."

En todos los demás casos citados (*Fernández* v. *Alonso Riera & Co.,* 41 D.P.R. 333; *Rodríguez* v. *Soto,* 42 D.P.R. 831; *Congress Cigar Co.* v. *Grau,* 44 D.P.R. 649; *Congress Cigar Co.* v. *Cabrera,* 45 D.P.R. 183; *Sucn. Drew* v. *Pinto,*

49 D.P.R. 579; *Figueroa* v. *Bonilla,* 50 D.P.R. 32; *Nine* v. *Avilés,* 53 D.P.R. 494; y *Martí* v. *Hernández,* 57 D.P.R. 819) lo que se sostiene es que para tener derecho a ejercitar la acción rescisoria que establecen los artículos 1243 y 1249 del Código Civil (Ed. 1930) es necesario que la obligación o crédito a favor del demandante existiera ya en la fecha en que se efectuó el alegado traspaso fraudulento o sea que el demandante tuviera èn esa fecha la condición de acreedor del demandado.

En ninguno de los casos citados se sostiene que para que un demandante tenga causa de acción para anular un traspaso fraudulento sea requisito indispensable que la deuda u obligación estuviera vencida o fuera exigible en la fecha en que se efectuó la alegada enajenación.

En sus comentarios sobre el artículo 1291 del Código Civil Español, que es el equivalente al 1243 del nuestro (Ed. 1930), en el que se dispone que son rescindibles los contratos celebrados en fraude de acreedores, dice Manresa:

"Llegamos, después de lo que acaba de decidirse, a la afirmación de que el primero de los requisitos es la existencia de un crédito: existencia que ha de ser anterior al contrato, aunque la exigibilidad de aquél sea posterior a la fecha de éste, ya que previéndola puede prepararse la insolvencia. La fecha de su crédito y la prioridad respecto a la del contrato, corresponde probarlas, con arreglo a los principios ordinarios, al que intente la acción rescisoria." Manresa, 4a ed., Vol. VIII, pág. 668.

Véase: *Stein* v. *Gibbons,* 16 La. 103.

¿Eran Carmen y Joaquín Padín deudores del demandante cuando en julio 2 de 1937 traspasaron sus bienes, fraudulentamente, según se alega, al otro demandado, Casanova Prats? A nuestro juicio lo eran.

Por la fianza otorgada en junio 11, 1937 los demandados Padín se obligaron a pagar a Castellón los daños y perjuicios que pudiera causarle el embargo, siendo el límite de esa obligación la suma de $3,000. Es cierto que la deuda u obligación contraída por los demandados no estaba vencida ni

era exigible en la fecha del traspaso, cuya simulación y fraudulencia deben considerarse como admitidas por la excepción previa; que la fecha del vencimiento o exigibilidad de la deuda u obligación tenía que ser fijada, como lo fué, por la sentencia declarando nulo el embargo; y que los fiadores nada hubieran tenido que pagar si por la sentencia se hubiese declarado que el embargo era válido. Pero no es menos cierto que en la fecha del traspaso fraudulento existía una obligación contractual válida de pagar una suma indeterminada de dinero, que no podría exceder de $3,000, si y cuando la corte de distrito fallase que el embargo había sido ilegalmente trabado, sujeta dicha obligación a la condición de que los fiadores nada tendrían que pagar a Castellón si la sentencia le fuera adversa.

Las autoridades estatales que hemos examinado sostienen, casi unánimemente, que no es requisito indispensable para el ejercicio de la acción rescisoria que la obligación a favor del demandante estuviera vencida o fuere exigible en la fecha del traspaso fraudulento.

En *Washington* v. *Norwood,* 128 Ala. 383, 30 So. 405 se sostuvo que un fiador es un acreedor del cofiador desde la fecha del otorgamiento de la obligación común, y que como tal acreedor tiene derecho a ser protegido contra un traspaso fraudulento hecho por su cofiador con posterioridad al otorgamiento de la fianza; pero no puede mantener la acción para hacer valer su derecho, hasta que la reclamación esté vencida y sea exigible. Véase: *First National Bank* v. *Mc Donough,* 168 P. 635.

En la obra Corpus Juris encontramos los párrafos que copiamos a continuación por considerarlos pertinentes al caso de autos:

"La regla general es que cualquier acreedor preexistente tiene derecho a atacar un traspaso de bienes por su deudor por haber sido hecho en fraude de los derechos de sus acreedores.

"Acreedores existentes, como se infiere de las mismas palabras, son las personas que tenían obligaciones contra el deudor, subsistentes

en la fecha en que se efectuó el traspaso fraudulento o se constituyó el fideicomiso secreto, aun cuando sus reclamaciones no hubieren vencido o no se hubieran reconocido por sentencia hasta después de efectuado el traspaso. La obligación se retrotraerá a la fecha de su origen, en cuanto a la cuestión de constituir al reclamante en un acreedor ya existente. 27 C. J. párr. 111 y 112, pág. 472.

"*Obligaciones Contingentes.*—Aún cuando existen algunas autoridades en contrario, . . . de acuerdo con el peso de las autoridades una obligación contingente está tan plenamente protegida contra traspasos fraudulentos y voluntarios como una obligación cierta y absoluta, y cualquiera que tenga una reclamación o demanda procedente de una obligación preexistente, aun cuando sea contingente, es un acreedor cuyos derechos son afectados por tales traspasos y puede anular éstos cuando ocurra la contingencia de la cual dependa su reclamación." 27 C. J. párr. 113 pág. 473 y casos citados.

El Tribunal Supremo de España, por sentencia de marzo 11, 1878 (39 J. C. 285), declaró fraudulenta la venta de ciertos condominios en una casa, únicos bienes que el vendedor poseía, a favor de un hijo del mismo, para eludir el pago de una fianza de que había salido aquél responsable. Y por otra sentencia de octubre 4, 1884 (56 J. C. 238) decidió que las enajenaciones gratuitas se presumen fraudulentas y pueden revocarse, con sólo acreditar que han perjudicado a los acreedores, no siendo preciso, por consiguiente, que el deudor haya sido condenado en juicio antes de realizar la enajenación que se impugne como dañosa a los acreedores. Véase Enc. Jur. Española, Tomo 13 págs. 578 y 579.

De las alegaciones del demandante—admitidas por los demandados—aparece que siendo ya firme la sentencia que anuló el embargo, Roberto Castellón radicó ante la Corte de Distrito de San Juan dos demandas distintas y separadas. En la primera, que fué registrada con el número 32,159, reclamaba la suma de $3,000 como importe de los daños y perjuicios causados por el embargo. La segunda, registrada bajo el número 32,160, es la que dió origen al presente litigio. De acuerdo con la jurisprudencia de esta jurisdicción, el demandante pudo haber ejercitado ambas acciones conjun-

tamente, en una sola demanda, y la corte pudo en uso de su discreción consolidar ambos casos para ser vistos en un solo acto. El demandante no estaba obligado a esperar que recayese sentencia en el caso de daños y perjuicios, para poder ejercitar la acción rescisoria o la de nulidad del alegado traspaso fraudulento. Así lo resolvió esta Corte en *Sucn. de Almazán* v. *López*, supra:

"... No se necesita que el demandante sea acreedor con su crédito reconocido por sentencia antes de comenzar el pleito de rescisión. Lo que se necesita es que en realidad de verdad sea un acreedor legítimo del demandado. Si su crédito estaba reconocido por sentencia al comenzarse el pleito de rescisión, o lo fué durante el curso del mismo, será una circunstancia más demostrativa del derecho del demandante, pero de la cual hubiera podido prescindirse, limitándose el demandante a alegar y probar en el mismo pleito de rescisión su condición de acreedor del demandado."

En el caso de autos, al comenzarse el pleito de rescisión, el derecho del demandante a recobrar daños y perjuicios no estaba aún reconocido por sentencia, pero lo fué durante el curso del mismo. El demandante está autorizado para probar dentro del pleito de rescisión la cuantía de su reclamación como acreedor de los demandados, ofreciendo en evidencia la sentencia dictada a su favor en el pleito de daños y perjuicios, núm. 32,159. Su condición de acreedor quedó fijada desde que se otorgó la fianza a su favor en fecha anterior a la del traspaso de cuya nulidad se trata. Disuelto el embargo, que fué la contingencia que hizo exigible la fianza, la cuantía de la indemnización podía ser fijada dentro de la acción rescisoria o en una acción separada como, según se alega, se hizo en este caso.

La misión principal de las cortes de justicia es proporcionar un remedio legal adecuado para la reparación de cualquier daño que haya sido ilegalmente causado al que ante ellas acude en demanda de auxilio. *Ubi jus, ibi remedium.* Mayor aun debe ser el celo y el cuidado de los tribunales, en el cumplimiento de tan alta misión, cuando se trata de per-

seguir o de evitar el fraude y la simulación. Como dijimos en *Roig Commercial Bank* v. *Portela,* 52 D.P.R. 647, es en estos casos de fraude "Cuando las simpatías del juzgador deben estar con la persona defraudada, de suerte que no debe privársele de su derecho por algún motivo realmente técnico . . . ''.

Si los hechos alegados en la demanda y admitidos por la excepción previa, o sea el traspaso gratuito y simulado de sus bienes por los fiadores poco tiempo después de haber otorgado una fianza de embargo, pudieran realizarse con impunidad, ¿qué valor tendrían las fianzas y qué garantías tendrían aquellos cuyos bienes hubieran sido embargados indebidamente?

Si por el mero tecnicismo de que la fianza no era exigible en la fecha del traspaso fraudulento, sostuviéramos que el demandante no tenía en esa fecha la condición de acreedor de los fiadores, estaríamos cometiendo un error de derecho y perpetuando y alentando el fraude al permitir que los fiadores eludan el pago de lo que justamente deben al demandante y continúen siendo dueños de los bienes simulada y gratuitamente traspasados a su codemandado.

*Deben revocarse la resolución y sentencia de junio 24 de 1941 por las cuales se declaró con lugar la excepción previa a la demanda enmendada de marzo 20 de 1941 y sin lugar dicha demanda enmendada y devolverse el caso a la corte inferior para ulteriores procedimientos no inconsistentes con esta opinión.*